J-A09018-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| ALEXANDER CHADA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| HEATHER SNOW GAAL | : | No. 1065 WDA 2023 |

Appeal from the Order Entered August 16, 2023
In the Court of Common Pleas of Allegheny County Family Court at
No(s):  FD 19-007530-005

BEFORE:  DUBOW, J., KUNSELMAN, J., and NICHOLS, J.

MEMORANDUM BY KUNSELMAN, J.:                    **FILED: MAY 9, 2024**

Alexander Chada (Father) appeals the decision of the Allegheny County Court of Common Pleas, which granted the request of Heather Snow Gaal[1] (Mother), and ordered that the parties' seven-year-old son (the Child) move back to Pennsylvania after living with Father in California for the previous two years.  On appeal, Father argues that the trial court lacked authority under the Uniform Child Custody Jurisdiction and Enforcement Act (UCCJEA) to hear Mother's modification petition.  **See** 23 Pa.C.S.A. § 5422(a)(1).  Alternatively, Father argues that the trial court misapplied the Child Custody Act.  **See** 23 Pa.C.S.A. §§ 5328(a); 5337(i), (h).  After careful review, we affirm.

The record discloses the following factual and procedural history. Mother and Father met in 2015 while receiving in-patient treatment at a drug

_____

[1] The trial court indicated that Mother's surname is now "Gray."

and alcohol rehabilitation facility. After a brief relationship, their Child was born in April 2016.

Father had limited contact with the Child, but he assumed custody shortly after Mother began a term of incarceration stemming from drug charges in October 2016. At the time, the Child was placed in the custody of the Paternal Grandparents, in Allegheny County. A week later, Father was released from rehab and returned to Paternal Grandparents' home. Mother remained incarcerated from October 2016 through May 2017. During Mother's incarceration, Father obtained an order from the Westmoreland County Court of Common Pleas granting him sole legal and physical custody of the Child.

Following her release, Mother was granted supervised custody, twice per week, in a public setting. This was the extent of Mother's custody for the next two years, until May 2019, when the case was transferred to the Allegheny County Court of Common Pleas.

Father then sought to relocate with the Child to California. The trial court held a hearing on Father's proposed relocation in the summer of 2020. At the time of the hearing, Mother said she had been clean and sober for five years, whereas Father's self-reported clean date was January 2020. However, Father had a more significant relationship with the Child. Critically, Father testified that a high paying job awaited him in California, that he planned to live with his sister at no-cost, and, perhaps most importantly, Father testified that Paternal Grandparents (who had cared for the Child with Father since infancy) were also moving to California. The court granted Father's request

to relocate. The Child then lived with Father in California during the school year but spent summers with Mother in Pennsylvania.

In June 2022, Mother petitioned the court to modify the custody arrangement, requesting that the Child move back to Pennsylvania. In response, Father argued that Pennsylvania no longer had exclusive, continuing jurisdiction under the UCCJEA. The trial court held a hearing on the question of jurisdiction on September 28, 2022, and the court concluded it retained jurisdiction. *See* Findings of Fact and Conclusions, 10/13/22, at 3-4.

The trial court then held the custody modification hearing on July 7 and August 8, 2023. The court heard from Mother, Father, and a behavioral therapist at the Child's school; it also conducted an *in camera* interview with the Child. Thereafter, the court granted Mother's petition and issued its "Findings, Conclusions, and Order" on August 11, 2023.

Therein, the trial court analyzed the custody factors enumerated in Sections 5328(a) and 5337(h), and delineated extensive findings. ***See*** Findings, Conclusions, and Order at 1-17. In sum, the court determined that the beneficial life that Father said the Child would have in California did not come to pass. Father did not obtain the job he said awaited him, he eventually moved out of his sister's guest home, and the Paternal Grandparents did not move to California. Meanwhile, the Child's relationship with Mother began to flourish during his trips to Pennsylvania. After weighing the factors, the court determined that it was in the Child's best interests to move back to

Pennsylvania, and the court awarded Mother primary physical custody. Father timely filed this appeal.

Father presents the following five issues for our review:

1. Whether the trial court abused its discretion and/or erred as a matter of law in granting Mother's request for relocation when the trial court lack jurisdiction to hear the matter.

2. Whether the trial court abused its discretion and/or erred as a matter of law when it granted Mother's request for relocation where Mother, as the relocating party, failed to meet her burden of proof and establish that relocation was in the best interest of the child pursuant to 23 Pa.C.S.A. § 5337(i) and the relocation factors set forth in 23 Pa.C.S.A. § 5337(h).

3. Whether the trial court abused its discretion and/or erred as a matter of law in its application of the relocation factors set forth in 23 Pa.C.S.A. § 5337(h) and the custody factors set forth in 23 Pa.C.S.A. § 5328.

4. Whether the trial court abused its discretion and/or erred as a matter of law when it failed to consider or give appropriate weight to the current status and instead focused on issues previously adjudicated, effectively rendering a reconsideration of the 2020 relocation trial.

5. Whether the trial court abused its discretion and/or erred as a matter of law when it failed to give appropriate weight to the Child's testimony that he did not wish to relocate to Pennsylvania, that he wished to continue living with Father, and whether the trial court found that the Child is "developmentally on track for his age, if not more so," and where the trial court found him to be credible, responsive, and truthful.

Father's Brief at 34 (style adjusted).

**I.**

In his first issue, Father challenges the trial court's determination that it retained exclusive, continuing jurisdiction to resolve Mother's custody petition. To resolve this challenge, we are mindful of the following standard of review. A trial court's decision that it retains or relinquishes exclusive, continuing jurisdiction over a custody determination pursuant to Section 5422 of the UCCJEA implicates the court's subject matter jurisdiction and is purely a question of law. **Boback v. Pershing**, -- A.3d --, 2024 PA Super 30, 2024 WL 697159 (Pa. Super. 2024) (citation omitted). Accordingly, this Court's standard of review is *de novo* and our scope of review is plenary. **Id.**

"The purpose of the UCCJEA is to avoid jurisdictional competition, promote cooperation between the courts, deter the abduction of children, avoid relitigating custody decisions of other states, and facilitate the enforcement of custody orders of other states." **A.L.-S. v. B.S.**, 117 A.3d 352, 356 (Pa. Super. 2015). The UCCJEA was also enacted to conform state law with the Parental Kidnapping Prevention Act (PKPA), 28 U.S.C. § 1738A, which is a federal law requiring "that states give full faith and credit to another jurisdiction's child custody determination made in compliance with the provisions of the PKPA." **R.M. v. J.S.**, 20 A.3d 496, 502-03 (Pa. Super. 2011); **see also** U.S. Const. Art. IV, § 1.

Section 5422 of the UCCJEA provides, the court which has made the initial child custody determination – in this case, the Pennsylvania court – will

continue to have exclusive, continuing jurisdiction over the custody matter *until*:

> (1) a court of this Commonwealth determines that neither the child, nor the child and one parent, nor the child and a person acting as a parent have a significant connection with this Commonwealth and that substantial evidence is no longer available in this Commonwealth concerning the child's care, protection, training and personal relationships;

23 Pa.C.S.A. § 5422(a)(1).[2]

On appeal, Father maintains that the Child no longer has significant connection to Pennsylvania, because the Child has a ***more*** significant connection to California. ***See generally*** Father's Brief at 49-50. Father's argument misunderstands the law.

The Uniform Law Comment to Subsection 5422(a)(1) provides guidance:

---

[2] Section 5422 provides a second situation when the court would lose exclusive continuing jurisdiction – namely, when:

> (2) a court of this Commonwealth or a court of another state determines that the child, the child's parents and any person acting as a parent do not presently reside in this Commonwealth.

23 Pa.C.S.A. § 5422(a)(2).

Subsection 5422(a)(2) does not apply, because Mother is still a resident of Pennsylvania. We have explained, "Section 5422 is written in the disjunctive, and, therefore, the trial court is required only to determine whether the child fails ***one*** of the jurisdictional tests set forth in Section 5422(a)." ***Boback***, at *2 (emphasis original) (citing ***T.D. v. M.H.***, 219 A.3d 1190, 1195 (Pa. Super. 2019)). This matter turns on Subsection 5422(a)(1).

> If a parent or a person acting as a parent remains in the original decree state, continuing jurisdiction is lost when neither the child, the child and a parent, nor the child and a person acting as a parent continue to have a significant connection with the original decree state **and** there is no longer substantial evidence concerning the child's care, protection, training and personal relations in that state.
>
> In other words, **even if the child has acquired a new home state**, the original decree state retains exclusive, continuing jurisdiction, so long as the general requisites of the "substantial connection" jurisdiction provision of [Section 5421) are met. If the relationship between the child and the person remaining in the state with exclusive, continuing jurisdiction becomes so attenuated that the court could no longer find significant connections and substantial evidence, jurisdiction would no longer exist.

23 Pa.C.S.A. § 5422 – Uniform Law Comment (emphasis added) (style adjusted).

This Court has further explained how the phrase "significant connection" should be understood:

> We note that the phrase "significant connection" is not defined in the UCCJEA. "Significant" is defined as "having meaning" or "important." MERRIAM WEBSTER'S COLLEGIATE DICTIONARY 1091 (10th ed. 1997). "Connection" is defined as "the state of being connected," or "a relation of personal intimacy." **Id**. at 245. Therefore, pursuant to the plain and ordinary meaning of the phrase "significant connection," exclusive, continuing jurisdiction is retained under section 5422(a)(1) as long as the child and at least one parent have an important or meaningful relationship to the Commonwealth. Accordingly, we must look at the nature and quality of the child's contacts with the parent living in the Commonwealth.

**Rennie v. Rosenthol**, 995 A.2d 1217, 1221-22 (Pa. Super. 2010) (footnotes omitted).

We note that "[t]he use of the term 'and' requires that exclusive jurisdiction continues in Pennsylvania until both a significant connection to Pennsylvania and the requisite substantial evidence are lacking." ***Rennie***, 995 A.2d at 1221. Moreoever, it does not matter if California became the Child's home state, so long as the Child still had a "significant connection" to Pennsylvania. Section 5422(a)(1) does not ask which state has a better connection, nor which parent has primary custody. ***See id*** at 1222 ("The statute does not specify that courts must determine that the parent with primary custody of a child has a significant connection with the state to retain jurisdiction."). The question is whether, following the relocation to California, the Child and Mother maintained a meaningful relationship to Pennsylvania. As long as a significant connection with Pennsylvania exists ***or*** substantial evidence is present, Pennsylvania will retain jurisdiction. ***See id.***

In its Findings of Fact and Conclusions, dated October 13, 2022, the trial court explained why it determined that the Child still had a significant connection to Mother in Pennsylvania:

> Mother testified that she has exercised parenting time in Pennsylvania consistent with that granted in the Relocation Order summarized above. Specifically, since the relocation occurred, the Child has been in Pennsylvania with Mother for at least six weeks each summer. At the midpoint of Mother's summer custody, as set forth in paragraph 4(e) of the Relocation Order, Father has exercised a week of custody in 2021 and 2022; in both years, Father elected to exercise his week with the Child at Paternal Grandparents' house in Pennsylvania. In addition, the Relocation Order gives Mother custody of the Child each year for either Easter or Thanksgiving; she testified that in 2022 the Child was

"home with me for a week in Easter." Mother also receives a "floating" additional three days of custody in Pennsylvania and half of the Child's Christmas/New Year/Winter Holiday break. In 2021, the parties extended Mother's time at the Christmas break by tacking on her "floating" three days of custody so as "to avoid another contempt petition."

To summarize, in each of the last two years the Child was in Pennsylvania for seven weeks each summer. Additionally, the Child spent time in the Commonwealth for holidays and for Mother's "floating" three days of custody. Based on the credible testimony at the hearing, and consistent with the Relocation Order, the Court finds that the Child has been in Pennsylvania for at least two months each year since relocation was granted.

[* * *]

The court must also consider the quality of the Child's contacts with the parent and extended family living in the Commonwealth. When the Child moved to California in February 2021, he was spending three nights a week in Mother's custody. Since then, Mother has maintained a close bond with the Child and has exercised the partial custody granted her in the Relocation Order. Last year Mother married [] Shawn Gray, who is now the Child's stepfather. He and the Child have a good relationship; they recently built a treehouse together in the backyard. The Child has relationships with his maternal aunt in New Kensington and the aunt's three children, the Child's maternal cousins, who are ages 3, 6, and 9. Through his stepfather, the Child has three adult step-siblings. […] [3]

Since infancy, the Child has maintained a close bond with his Paternal Grandparents, who reside in Natrona Heights. Father and the Child stayed at Paternal Grandparents' home for a full week during each of the past two summers. They have also stayed with Paternal Grandparents for certain holidays, including Christmas.

_____

[3] The trial court noted that the Child also had an adult, maternal half-sister who also lives in Pennsylvania. However, the trial court did not consider this relationship to be a factor in its decision, due to a prior allegation of abuse (albeit one that that was later deemed unfounded).

> Based upon the foregoing, the court concludes that Child and Mother have a significant connection to Pennsylvania.

Findings of Fact and Conclusions, 10/13/22, at 3-4.

After review, we discern no error. For the first four years of his life, the Child lived in Pennsylvania. Since his relocation to California, Mother regularly exercised periods of partial custody in Pennsylvania, including extensive custody of the Child in the summer. The trial court determined Mother and the Child have a close bond and the Child has a good relationship with his Stepfather and extended family. Even though Mother's earlier relationship with the Child was affected by her addiction, she did not allow the Child's relocation to California harm their developing bond. For these reasons, we conclude that the trial court did not err when it determined that the Child still had a significant connection to Pennsylvania. Thus, the court did not err when it determined it had exclusive, continuing jurisdiction under Section 5422(a)(1) to resolve the parties' custody dispute. Father's first issue is without merit.

## II.

In his second appellate issue, Father claims the trial court misapplied Section 5337(i) (relating to burdens of proof). **See** Father's Brief at 51. The interpretation and application of a statute is a question of law; thus, our scope of review remains plenary and our standard of review *de novo*. **See, e.g., E.C.S. v. M.C.S.**, 256 A.3d 449, 454 (Pa. Super. 2021).

As an initial matter, we note that Father mischaracterizes the law. Technically speaking, this matter is not a "relocation" case. When the Legislature enacted 23 Pa.C.S.A. § 5337 to address relocation, it anticipated there would be a "relocating party" and a "non-relocating party." ***See White v. Malecki***, 296 A.3d 1210, 1214 (Pa. Super. 2023) (citing ***D.K. v. S.P.K.***, 102 A.3d 467, 472 (Pa. Super. 2014)). Not all the relocation provisions set forth in Section 5337 apply when "both parents have lived in their current residences for some time, and neither parent is moving." ***White***, 296 A.3d at 1214 (citing ***D.K.***, 102 A.3d at 473).

To be sure, in a situation like the one before us – where neither parent is seeking to relocate, and only the child would be moving to a significantly distant location – trial courts "should still consider the relevant factors of Section 5337(h) in their Section 5328(a) best interest analysis." ***Id.*** (citing ***D.K.***, 102 A.3d at 477-78).[4] Here, the trial court properly considered both sets of factors, and we address the propriety of those analyses ***infra.*** The question presented by Father's second issue concerns the applicability of 5337(i) (relating to the burden of proof in a relocation matter).[5]

---

[4] We previously held that Section 5328(a)(16) ("any other ***relevant*** factor") ropes in the Section 5337(h) factors; the Section 5337(h) factors are *per se* relevant to the Section 5328(a) best interest analysis. ***White***, 296 A.3d at 1214***.***

[5] Section 5337(i) provides:

*(Footnote Continued Next Page)*

Father maintains that Mother had the burden of proving that the Child's move back to Pennsylvania would be in his best interests. On this point, he is correct. Where neither parent is relocating, and only the child stands to move a significant distance, we have held that the burden each parent shoulders is substantially similar to that of Section 5337(i). **See White**, 296 A.3d at 1215-16. Here, Mother requested primary custody so that the Child could move from California back to Pennsylvania; thus, Mother had the burden to prove that the Child's move would be in his best interests.

However, Father suggests he had no burden of his own. **See** Father's Brief at 51-52. This is incorrect. We have held that "each parent shares the burden of proving, by a preponderance of the evidence, that an award of custody to him or her would serve the best interests of the Child." **White**, 296 A.3d at 1215 (quoting **Graves v. Graves**, 265 A.3d 688, 698 (Pa. Super. 2021)).

With the burden clarified, we turn to Father's substantive argument on this point. He maintains that the entire case was Mother's to prove, and as

_____

(1)   The party proposing the relocation has the burden of establishing that the relocation will serve the best interest of the child as shown under the factors set forth in subsection (h).

(2)   Each party has the burden of establishing the integrity of that party's motives in either seeking the relocation or seeking to prevent the relocation.

23 Pa.C.S.A. § 5337(i).

such, the trial court should not have weighed certain facts against him. According to Father, the trial court misapplied the law when it focused too attentively on his shortcomings.

For instance, in its analysis of Section 5337(h)(7) ("Whether the relocation will enhance the general quality of life for the child, including, but not limited to, financial or emotional benefit or educational opportunity"), the trial court noted that neither party conducted a particularly thorough investigation of the comparative educational opportunities available in California versus Pennsylvania. *See* Findings, Conclusions, and Order at 9. Father asserted that the opportunities available in California could not be found in Pennsylvania, but the court said that Father made no effort to ascertain the veracity of that assertion. *Id.* Similarly, the trial court took issue with Mother's efforts, finding that she merely made a phone call to the local school district to inquire about the availability of special education programs. *Id.* at 9-10. The court concluded: "Since neither party presented adequate evidence of the educational opportunities in Pennsylvania [as compared to California], the court is unable to determine which location would provide the Child with better support for his educational and special needs." *Id.* at 10. In Father's view, the trial court should have determined that Section 5337(h)(7) favors him, because it was not his burden to prove Pennsylvania lacked the opportunities offered by California. *See* Father's Brief at 52-53.

After review, we discern no error in the trial court's application of Section 5337(h)(7). Under this subsection, Mother had the burden of proving that the

Child's move to Pennsylvania would have an educational benefit. The court determined that Mother did not prove the same. However, the educational aspect of Section 5337(h)(7) was just one component of one factor in the court's multi-factored analysis. Ultimately, the court did not weigh this factor very heavily, in part because Father did not prove that the Child would miss out on superior educational opportunities in California if the Child were to move back to Pennsylvania. In this sense, Father's burden claim is largely a weight claim. As we discuss below, parties may not dictate the amount of weight the trial court places on the evidence. **See R.L.P. v. R.F.M.**, 110 A.3d 201, 208 (Pa. Super. 2015). Father's second issue merits no relief.

**III**.

Father's third appellate issue also concerns the application of the Child Custody Act. He maintains that the trial court erred by failing to give him added credit for being the Child's primary caretaker. **See** Father's Brief at 54-55 (citing **Johns v. Cioci**, 865 A.2d 931 (Pa. Super. 2004)). **Johns** provides:

> When both parents are otherwise fit, one parent's role as the primary caretaker may be given weight as the determining factor in a custody determination. The court must give attention to the benefits of continuity and stability in custody arrangements and to the possibility of harm arising from disruption of long-standing patterns of care.

Father's Brief at 55 (quoting **Johns**, 865 A.2d at 937).

Father's reliance on **Johns** is misplaced. We have repeatedly held that the primary caretaker doctrine, "insofar as it required positive emphasis on the primary caretaker's status" was no longer viable after Section 5328(a)

- 14 -

was enacted in 2011. *See M.J.M. v. M.L.G.*, 63 A.3d 331, 339 (Pa. Super. 2013); *see also P.J.P. v. M.M.*, 185 A.3d 412 (Pa. Super. 2018); *and see Carrero v. Lopez*, 300 A.3d 494, 499 (Pa. Super. 2023). "The considerations embraced by the primary caretaker doctrine have been woven into the statutory factors, such that they have become part and parcel of the mandatory inquiry." *M.J.M.*, 63 A.3d at 339. Under Section 5328(a), the need for continuity and stability is but one of many factors that the trial court must consider as part of its overall analysis. The trial court has discretion to weigh the factors as it sees fit, so long as the court gives weighted consideration to those factors affecting the child's safety. *See, e.g., Raymond v. Raymond*, 279 A.3d 620, 631 (Pa. Super. 2022). Courts must look to the custody factors, not threshold criteria such as the primary caretaker doctrine, to make a custody determination. *See Carrero*, 300 A.3d at 499 (discussing *Wiseman v. Wall*, 718 A.2d 844, 851 (Pa. Super. 1998)).[6]

---

[6] Father's quotation of *Johns* did not include a pin cite, but he noted the omission of certain internal quotations contained in the *Johns* excerpt. One of the internal quotations was from *Wiseman*, a case which has been flagged for being superseded by the 2011 revisions to the Child Custody Act. *See Carrero*, 300 A.3d at 499. Arguably, Father should have been on notice that reliance on *Johns* would be misplaced. But we note that *Johns* itself is not flagged; neither are a great many other cases that rely on an outdated version of the Child Custody Act. We have recognized that pre-2011 custody cases may retain their value, but we cautioned that the plain language of the current statute must always come first. *See Carrero*, 300 A.2d at 500; n.4. As new amendments to the Child Custody Act are imminent, we instruct practitioners to be mindful, not only of the "Shepardizing" indicators, but also of the *date* of the citations, including internal citations, in order to determine whether a case remains viable.

The instant case illustrates how a child's need for "continuity and stability" does not necessarily mean that the child should remain with the primary caretaker. The trial court explained that the last several years, spent in Father's primary care, have been unstable for the Child and that a move to Pennsylvania would actually provide the Child with more stability:

> Father has failed to deliver on a number of the promises he made at the August 2020 relocation custody trial. Father is not working directly for his sister [C.] in a $120,000 a year job. The Child's beloved paternal grandparents — and most significantly [Paternal Grandfather] — did not relocate to Southern California to continue their hands-on care of the Child. And three years on, the Child's residential situation remains in flux: Father moved from his sister's guest house about the time Mother filed this Modification into a one-bedroom apartment a little over a mile away. The building is rent subsidized for families earning under $90,000 a year. Father hopes to move next spring to a two-bedroom apartment. But there is a risk of his losing his eligibility for rent-subsidized housing should he achieve the income he assured the Court in 2020 that he would be making when his relocation was approved.

> Mother and her husband have lived in the same house in Butler for a number of years. She is a certified recovery specialist and assists people in recovery in finding housing. She has a flexible schedule that will allow her to meet any childcare needs.

Findings, Conclusions, and Order, 8/11/23, at 12-13.

In its Pa.R.A.P. 1925(a) opinion, the trial court further explained:

> While [23 Pa.C.S.A. § 5328(a)(4) (relating to stability and continuity)] on its face would seem to be in opposition to a proposed relocation, the court notes that both Father's residence and his income have been unsteady since his move to California. Father's income from May of 2021 to August of 2022 was just $18,000 which made Father eligible

for a universal basic income program. Father had also moved out of the guest house on his sister's property just five months before the trial in this matter. Conversely, Mother testified that she has resided at her current residence for four years and owns a rental management company. Unlike at the 2020 trial, the court now finds that this factor weights in Mother's favor.

Trial Court Opinion, dated 10/20/23 (T.C.O.), at 9.

After review, we conclude the trial court did not err when it failed to give weighted consideration to Father's status as the primary caretaker. Moreover, the trial court did not abuse its discretion when it determined that Mother would provide the Child with more stability under Section 5328(a)(4). Father's third issue is meritless.

**IV.**

In his fourth appellate issue, Father challenges the trial court's weighing of the custody factors. To resolve this claim, we observe the change in our standard of review:

> In reviewing a custody order, our scope is of the broadest type and our standard is abuse of discretion. We must accept findings of the trial court that are supported by competent evidence of record, as our role does not include making independent factual determinations. In addition, with regard to issues of credibility and weight of the evidence, we must defer to the presiding trial judge who viewed and assessed the witnesses first-hand. However, we are not bound by the trial court's deductions or inferences from its factual findings. Ultimately, the test is whether the trial court's conclusions are unreasonable as shown by the evidence of record. We may reject the conclusions of the trial court only if they involve an error of law, or are unreasonable in light of the sustainable findings of the trial court.

*White*, 296 A.3d at 1213 (quoting *D.K. v. S.P.K.*, 102 A.3d 467, 478 (Pa. Super. 2014)).

Father argues, without citation to any relevant legal authorities, that the trial court abused its discretion by giving inappropriate weight to all that transpired since the 2020 relocation trial. According to Father, the court did not review Mother's petition independently, but used the 2023 trial as a referendum on whether Father's 2020 relocation to California was a success. *See* Father's Brief at 64. More specifically, Father takes issue with the court's observation that Father did not obtain the six-figure salaried job he said awaited him 2020, that he moved out of his sister's California guest home, and most importantly, that Paternal Grandparents did not end up moving to California to be with him and the Child. *Id.* at 65.

In its Rule 1925(a) opinion, the trial court opined that Father's position lacked "logic and merit."

> Father is essentially arguing that the court should be barred from considering the statements that he and his witnesses made during the previous trial in this matter. However, both parties admitted the findings of the 2020 trial into the record of the most recent trial as Joint Exhibit 1. N.T., 7/7/23, at 218. Those findings contain the court's analysis of Father's assertions regarding the proposed relocation and there was no objection to their entry as an exhibit. There also was no limit placed on the court's use of them at the time that they were admitted. And so, with the findings properly before us, this court considered the progress made by Father and weighed his testimony regarding plans for the future accordingly.

T.C.O. at 10-12.

We agree that Father's position is illogical. To determine whether a custody modification is in a child's best interests, the trial court must be permitted to consider the lineal picture, including the history of the case and anything that transpired since the initial custody award – especially when the historical evidence was admitted at the modification hearing.

Still, we understand Father's point; he argues that by focusing on the promises that did not come to fruition – the job, the housing, and the Paternal Grandparents' move – the trial court penalized him. Father maintains that his overall situation was not affected by the promises that did not materialize. Although he moved out of his sister's guest house, he since found employment and an apartment in the same area so that the Child did not have to switch schools. Additionally, although Paternal Grandfather became too ill to move to California, the Child was not negatively impacted by the change of plans. In essence, Father concludes that the trial court should not have drawn negative inferences from certain facts. **See** Father's Brief at 64, 65. What Father must understand is that such inferences are within the trial court's purview. The court has discretion to weigh the testimony and evidence, and to assess the witnesses' credibility. **See White**, **supra.**

Although we are not bound by the trial court's inferences and deductions, our standard of review permits us to modify the trial court's decision only if the court abused its discretion. "Appellate interference is unwarranted if the trial court's consideration of the best interest of the child was careful and thorough, and we are unable to find any abuse of discretion."

*R.L.P. v. R.F.M.*, 110 A.3d 201, 208 (Pa. Super. 2015) (citation omitted). "An abuse of discretion is not merely an error of judgment, but rather a misapplication of the law or an unreasonable exercise of judgment." *Johnson v. Johnson*, 222 A.3d 787, 789 (Pa. Super. 2019). In mounting an abuse-of-discretion challenge, an appellant must demonstrate how the trial court's ruling "overrode the law, was manifestly unreasonable, or the product of bias, prejudice, ill-will or partiality." *Commonwealth v. Rogers*, 259 A.3d 539, 541 (Pa. Super. 2021).

Father does not explain how the trial court abused its discretion; instead, Father invites us to substitute our judgment for that of the trial court. But it is not the role of the Superior Court to re-find facts, re-weigh evidence, and re-assess credibility. *See, e.g., D.R.L. v. K.L.C.*, 216 A.3d 276, 285-86 (Pa. Super. 2019). Even if we disagreed with the trial court's judgment, we have long held that "an abuse of discretion is not merely an error of judgment." *Johnson*, 222 A.3d at 789. Because Father has not persuaded us that an abuse of discretion occurred, we conclude that his fourth issue is without merit.

**V.**

In his final issue, Father claims the trial court abused its discretion when it failed to give appropriate weight to the Child's testimony. *See* Father's Brief at 74. During the *in camera* interview, the seven-year-old Child said it was his preference to remain in California. *See* Findings, Conclusions, and Order, 8/11/23, at 8-9; 13-14. The trial court factored the Child's preference into its

- 20 -

analysis but decided to grant Mother's request that he move back to Pennsylvania.

On appeal, Father argues that the court should have afforded the Child's preference "some amount of weight, if not a substantial amount." *See* Father's Brief at 75. Father concludes: "Therefore, the trial court abused its discretion in failing to afford [the preference] any weight." *Id.* What Father seems to mean is the trial court should have afforded the Child's preference *dispositive* weight. Father's argument, again presented without citation to legal authorities, fails for the same reasons mentioned in the previous issue. The trial court's weighing of testimony and evidence was within its purview. The parties cannot dictate the amount of weight the trial court places on the evidence, which includes witness testimony. *See R.L.P.*, 110 A.3d at 208. Father's fifth issue merits no relief.

In sum, we conclude the trial court did not err when it determined it had exclusive, continuing jurisdiction under the UCCJEA. *See* 23 Pa.C.S.A. § 5422(a)(1). We further conclude that the trial court did not misapply the law regarding burdens of proof when it observed that Father failed to present convincing evidence that California would provide more educational benefits for the Child. Likewise, the trial court did not misapply the law when it did not give added weight to the fact that Father was the primary caretaker; the primary caretaker doctrine has been superseded by the 2011 revisions to the Child Custody Act. Furthermore, we discern no abuse of discretion when the trial court made negative inferences regarding that change in Father's

circumstances between the 2020 and 2023 trial, nor do we find an abuse of discretion when the trial court chose not to afford the Child's preference dispositive weight.

Order affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

FILED: 5/9/2024